# UNITED STATES BANKRUPTCY COURT
## Western District of Texas
## San Antonio Division

---

| | | |
|---|---|---|
| IN RE: | § | Bankruptcy Case |
| **Texas Association of Public Schools** | § | No. 17—52437—rbk |
| **Property and L**, Debtor(s) | § | |

---

| | | |
|---|---|---|
| **White Deer Independent** | § | |
| **School District et al.** | § | |
|     Plaintiff | § | |
| v. | § | Adversary Proceeding |
| | § | No. 18-05017—rbk |
| **Texas Association of** | § | |
| **Public Schools Property** | § | |
| **and Liability Fund et al.** | § | |
|     Defendant | § | |

---

## TEXAS ASSOCIATION OF PUBLIC SCHOOLS PROPERTY AND LIABILITY FUND'S MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE COURT:

Defendant Texas Association of Publics Schools Property and Liability Fund ("TAPS") files its **MOTION FOR SUMMARY JUDGMENT** and would show the Court as follows:

## I.

1. Plaintiff White Deer I.S.D. ("White Deer") sues to have TAPS reimburse a taxpayer for any taxes that White Deer illegally assessed and collected. Public policy and TAPS Coverage Document (App. 1) both forbid covering White Deer's obligation to reimburse taxpayers for illegal taxes and fees. Public policy forbids this because:

> [i]f disgorging such proceeds is included within the policy's definition of "loss," thieves could buy insurance against having to return money they stole. No one writes such insurance. [citations omitted] [N]o state would enforce such an insurance policy if it were written. [citations omitted]. And so there is no insurable interest in the proceeds of a fraud.

> \* \* \*

> Whether a claim for restitution is based on fraud or on some other deliberate tortious or criminal act, or at the other extreme of the restitution spectrum merely on an innocent mistake or the rendition of a service for which compensation is expected but contracting is infeasible (as when a physician ministers to a person who collapses unconscious on the street); and whether the plaintiff is seeking the return of property or the profits that the defendant made from appropriating it, a claim for restitution is a claim that the defendant has something that belongs of right not to him but to the plaintiff.

*Ryerson Inc. v. Fed. Ins. Co.*, 676 F.3d 610, 612-13 (7th Cir. 2012) (Posner, J.).  White Deer's arguments would encourage local government to levy illegal taxes, safe in the knowledge it may retain them.

## II.     Summary

**A.     No duty to defend or indemnify White Deer.**

2.  TAPS owes no duty to defend White Deer in the underlying suit because:

a)  The pleading does not allege a covered claim and all claims fall within the exclusions;

b)  The pleading does not allege a loss, i.e., a claim for money damages;

c)  Reimbursing taxes is excluded as a covered loss;

d)  Claims for non-pecuniary, declaratory and injunctive relief are excluded;

e)  Any claim to reimburse taxes unlawfully assessed and collected is

    i.   excluded;

    ii.  is uninsurable as against public policy and therefore excluded;

f)  Any claim to reimburse taxes unlawfully collected is excluded as:

    i.   a profit, remuneration or advantage to which White Deer is not entitled;

    ii.  money obtained as a result of a fraudulent or dishonorable act.

3.  Alternatively, TAPS has no duty to indemnify White Deer for any part of the judgment.  There is no loss resulting from a claim as defined by the Coverage Document because:

a)  the judgment is not for money damages;

b)  reimbursement of taxes is not a loss under the Agreement;

c)  reimbursing taxes unlawfully collected is uninsurable and therefore excluded;

d)  reimbursement of taxes unlawfully collected is excluded as:

      i.  a profit, remuneration or advantage to which White Deer is not entitled;

      ii.  money obtained as a result of a fraudulent or dishonorable act.

e)  the cost to perform nonpecuniary relief is excluded.

4.  Therefore, the claims for declaratory relief, breach of contract, and must be dismissed.

**B.      Immunity Bars White Deer's DTPA Claim.**

5.  The DTPA does not clearly and unambiguously waive TAPS's governmental immunity.  Several state and federal decisions hold a unit of a governmental entity cannot be liable under the DTPA.

**C.      No evidence of White Deer's DTPA Claims.**

6.  On the merits of the claim, White Deer must prove that before it obtained the policy, TAPS made a specific representation about the policy's coverage that was the producing cause of damage.  This usually requires that the consumer prove a specific representation that a loss would be covered which the policy did not cover, the consumer relied on the representation to purchase the policy, and the misrepresentation was not discovered until after the loss.  White Deer does not allege a specific representation and has offered no evidence of specific representation the Coverage Document would cover lawsuits arising from lowering the tax exemption, or that White Deer relied on it.

**D.      TAPS is not liable for attorney's fees.**

7.  White Deer alleges three statutory grounds for attorney's fees:  the DTPA, breach of contract, and declaratory relief.  TEX. BUS. & COMM. CODE §17.50; TEX. CIV. PRAC. & REM. CODE §§37.009, 38.001.  White Deer cannot recover under the DTPA.  Section 38.001 applies only if the defendant is an individual or corporation.  TAPS is neither. Finally, section 37.009 is part of state procedure and therefore does not apply in federal court.

### III.   Factual Background

**A.  The TAPS Coverage Document excludes coverage for taxes unlawfully levied.**

8.  TAPS is a self-funded risk program created under the Texas Interlocal Cooperation Act, Texas Government Code, chapters 791 and 2259.

9.  Its Coverage Document with White Deer provided TAPS must defend a "claim" or suit that alleges a "wrongful act" covered by the Educators Liability Form ("ELF"). App. 1, p. 68.  A "claim" means either:

a) Written notice that a person intends to hold the member responsible for a "wrongful act" through money damages, other than attorney's fees and court costs; or,

b) A judicial proceeding initiated against a member seeking to hold the member responsible through money damages, other than attorney's fees and court costs.

App. 1, p. 68.  Thus, TAPS is not required to defend a lawsuit unless it alleges a claim for "money damages," other than attorney's fees and costs.

10.  The Coverage Document ELF required TAPS to pay on behalf of a member a "loss" resulting from a "claim" for a "wrongful act."  A "loss" is defined to mean damages but does not include (i) taxes, and (ii) matters deemed uninsurable by the law applicable to the Coverage Document.  App. 1, p. 49.  Thus, the ELF does not require TAPS to indemnify for damages that are taxes or matters deemed uninsurable by Texas law.  Likewise, the ELF does not require TAPs to indemnify a loss that is not "money damages" because that loss does not result from a "claim."

11.  Further, the Coverage Document ELF provides TAPS is not required to defend or to pay a "claim" based upon, brought about, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving:

a)  Any "claim" seeking non-pecuniary relief and has no obligation to effect or pay for the costs to effect such relief if granted.

b)  Any "claim" brought about or contributed to by any dishonest, fraudulent, or criminal "wrongful act" of any member.

App. 1, p. 69, 70.

12.  Finally, the Coverage Document ELF provides TAPS is not liable to pay a "loss" for a "claim" based on or attributable to any member gaining in fact any, profit, remuneration, or advantage to which the member was not legally entitled.  App. 1, p. 70.

**B.    Martin sues White Deer to declare invalid its revocation of a tax exemption and to recover the higher taxes it unlawfully forced Martin to pay.**

6

13. Kelly Martin's dispute with White Deer turns on the retroactivity of changes in Texas's homestead exemption for property taxes. Prior to 2015, Texas law provided the first $15,000.00 of a homestead's value was not taxable; further, local governmental units could increase the exemption within a specified limit. TEX. TAX CODE §11.13. The latter was called the Local Option Home Exemption ("LOHE").

14. In June 2015, the Governor signed S.B. 1, which enacted changes that required a constitutional amendment. First, S.B. 1 raised the homestead exemption to $25,000.00. Second, it forbid schools that adopted a LOHE for tax year 2014 from reducing or repealing their LOHE until 2019. Third, S.B. 1 provided it would not take effect until a constitutional amendment was approved, which was not approved until November 2015. TEX. TAX CODE §11.13(n-1); TEX. CONST. art. VIII, §1-b.

15. White Deer had adopted an LOHE for tax year 2014. On June 30, 2015, it lowered its LOHE. App. 5.

## C. Martin sues to declare White Deer's reduced LOHE invalid and for reimbursement of the resulting higher tax.

16. In 2016, Martin sued White Deer, its trustees, and its superintendent, and the County tax assessor. App. 2. Martin's lawsuit sought:

a) declaratory relief that defendants' actions were *ultra vires* and violated Due Process and due course of law under the Texas Constitution;

b) a permanent injunction to reinstate White Deer's 2014 LOHE for 2015 through 2019; and,

c) "a refund of illegal collected taxes which Plaintiff paid to the school district as a result of duress."

App. 2, p. 2 ¶2.  Martin alleged reducing the LOHE and then collecting higher taxes were *ultra vires* and without legal authority.  App. 2, p. 8 ¶25.  Defendants had illegally taken and deprived Martin of her money by causing Martin to pay taxes under duress.  App. 2, p. 9 ¶26.

17.  Martin sought declaratory relief that:

a) any repeal or reduction of the LOHE in 2015 was void;

b) White Deer's changes to the 2014 LOHE were *ultra vires* and violated Martin's constitutional rights; and

c) collecting taxes subject to the 2015 LOHE was *ultra vires* and violated Martin's rights.

App. 2, pp. 9-10 ¶27. Martin sought injunctive relief directing White Deer to:

a) Reinstate the LOHE for 2014; and,

b) Stop assessing and collecting taxes subject to the LOHE.

App. 2, p. 11 ¶28-29.

18.  Martin also requested a refund of taxes collected that were subject to the LOHE.

App. 2, p. 12 ¶33.  Martin "paid such taxes under duress . . ." App. 2, p. 12 ¶34.  Martin's "tax funds were illegally taken and collected by Defendants . . ." App. 2, p. 12 ¶34.

**D.    Dueling summary judgment motions:  Martin argues taxes paid under duress to White Deer are not money damages.**

19.    Martin and White Deer filed cross-motions for summary judgments.  App. 3, 4, 5, 6.  Not surprisingly, White Deer asserted its governmental immunity against money damages barred refunding any taxes to Martin.  App. 5, pp. 13-15.  Otherwise, the dispute raged in a spirited discussion over S.B. 1's retroactivity and whether retroactive nullification violated the Texas Constitution.  App. 4, pp. 4-8; App. 5, pp. 5-12; App. 6, pp. 1-5.

20.    White Deer argued that Martin's declaratory relief claims were a subterfuge to obtain money damages, which immunity would bar.  App. 5, p. 14-15.  Martin's denial was strong and clear that Martin was not "seeking recovery of 'money damages' in this case."  App. 6, p. 6.

> "The plaintiff is demanding only a refund of illegally collected taxes paid under duress, and claims of that sort are not claims for "money damages" precluded by governmental or official immunity."

App. 6, p. 6.

> "The district defendants mistakenly assert the plaintiff is claiming "money damages" when they [sic] are seeking only a refund of illegally collected taxes paid under duress."

App. 6, p. 7.  Martin then quoted *Kubosh v. Harris County*, 416 S.W.3d 483, 487 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) that "*claims for a refund are different than claims for money damages . . . .*" App. 6, p. 7 (emphasis added).  Martin quoted *Dallas Community College District v. Bolton*, 185 S.W.3d 868, 877 (Tex. 2005) that "[A] person who pays government fees and taxes under duress has a valid claim for their repayment . . ."  App. 6, p. 7.  Martin then quoted *Kilgore Indep. Sch. Dist. v. Axberg*, 535 S.W.3d 21,

33 (Tex. App.—Texarkana 2017, no pet.) that repayment of taxes collected under duress was equitable relief.  App. 6, p. 8-9.

**E.    The underlying suit's judgment granted declaratory and injunctive relief, including an order to "disgorge and refund" taxes illegally collected.**

21.   In April 2018, the state court entered a judgment that denied White Deer's motion and granted Martin's.  It granted declaratory relief that White Deer's reduction of its LOHE was void.  White Deer was enjoined from assessing and collection property taxes through December 2019 that were subject to the 2014 LOHE.  Finally, the court ordered that White Deer "*disgorge and refund* to Plaintiff those property taxes that it collected for tax years 2015, 2016, and 2017 from the plaintiff" that were subject to the 2014 LOHE. App. 7, pp. 2-3 (emphasis added).

22.  The judgment is on appeal. App. 8.  The court of appeals has abated the appeal. App. 9.

## IV.    Argument and Authorities

**A.    Standard to determine duties to defend and indemnify.**

23.   Because TAPS is a risk pool, it does not believe the Coverage Document (App. 1) is an insurance policy. However, to determine the duty to defend or to indemnify, TAPS agrees it is useful to analogize to those duties for liability insurance.

**1.  Duty to defend.**

24.    Texas follows the "eight-corners rule," in which the duty to defend is determined by the third-party plaintiff's pleadings, considered in light of the policy provisions, without regard to the truth or falsity of those allegations.  *Trinity Universal Ins.*

*Co. v. Employers Mut. Cas. Co.*, 592 F.3d 687, 691 (5th Cir. 2010); *Zurich Amer. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 490 (Tex. 2008). If the petition does not allege facts within the scope of coverage, there is no duty to defend. *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528 (5th Cir. 2004).

25. Initially, White Deer has the initial burden of demonstrating that the claims alleged against it in the underlying lawsuit fall within coverage. *Canutillo Indep. Sch. Dist. v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 99 F.3d 695, 701 (5th Cir.1996). The Court must focus on the facts Martin alleged, not on the legal theories or conclusions alleged. *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997). The facts alleged are presumed true. *Zurich Amer. Ins.*, 268 S.W.3d at 491. The court will construe the allegations liberally in favor of White Deer. *Id.* All doubts and ambiguities about the allegations are resolved in its favor. *Id.* If the factual allegations potentially support a claim covered by the policy, then the insurer must defend. *Id.* at 490. However, the court may not imagine factual scenarios which might trigger coverage. *Nat'l Union Fire Ins.*, 939 S.W.2d at 141-42.

26. To the extent TAPS relies on an exclusion to defeat the duty to defend, it has the burden to show that the alleged facts fall wholly within the exclusion. *Noble Energy, Inc. v. Bituminous Cas. Co.*, 529 F.3d 642, 646 (5th Cir. 2008). If the allegations support a potentially covered claim outside the exclusion, TAPS must defend. *Gore Design Completions Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 370 (5th Cir. 2008). If the petition alleges only facts excluded from coverage, there is no duty to defend. *Northfield*, 363 F.3d at 528.

## 2. **Duty to Indemnify.**

27.   The duty to indemnify generally cannot be ascertained until the completion of litigation, when liability is established, if at all. *See Farmers Tex. County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997); *see also VRV Dev. L.P. v. Mid-Continent Cas. Co.*, 630 F.3d 451, 459 (5th Cir. 2011). This is because the duty to indemnify is triggered by the actual facts establishing liability in the underlying suit and whether any damages caused by the insured and later proven at trial are covered by the terms of the policy. *Colony Ins. Co. v. Peachtree Constr., Ltd.,* 647 F.3d 248, 253 (5th Cir. 2011).  The duty to indemnify must generally be determined on the basis of the actual evidence pertaining to liability developed during discovery or at trial. *City of College Station v. Star Ins. Co.,* 735 F.3d 332, 340 (5th Cir. 2013).

28.   The Court can consider the duty to indemnify before the underlying litigation concludes if the insurer has no duty to defend and the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify.  *LCS Corr. Servs. v. Lexington Ins. Co.*, 800 F.3d 664, 668 n.4 (5th Cir. 2015); *Griffin*, 955 S.W.2d at 84.   The Court may rule on the duty to indemnify in a declaratory judgment action before the resolution of the underlying tort suit when the *Griffin* exception applies. *Id.*

## B.    **No duty to defend.**

29.   TAPS has no duty to defend because Martin failed to alleged facts supporting a covered "claim" or "loss" potentially within the Coverage Document ELF.  Martin failed

to allege a claim for "money damages."  Alternatively, Martin alleged facts showing her claims were excluded as non-pecuniary relief, the result of fraud or dishonesty, or matters deemed uninsurable as a matter of Texas public policy – all claims excluded from the scope of the duty to defend.[1]

### 1. Reimbursement of taxes illegally collected is not "money damages."

30.  TAPS must defend only claims – a lawsuit seeking to hold a member responsible through "money damages, other than attorney's fees or court costs."  App. 1, p. 68.  Therefore, White Deer must show Martin's petition alleged Martin sued to recover "money damages" from White Deer.  Martin's declaratory and injunctive relief claims do not trigger the duty.  TAPS is not required to defend claims seeking non-pecuniary relief.

31.  Money awarded as restitution or disgorgement is not "money damages" or a "loss."  *Nortex Oil & Gas Corp. v. Harbor Ins. Co.*, 456 S.W.2d 489, 493-94 (Tex. Civ. App.—Dallas 1970, no writ)(no coverage for insured's settlement of conversion and unjust enrichment claims for oil obtained by slant drilling onto claimant's property); *In re TransTexas Gas Corp.*, 597 F.3d 298, 310 (5th Cir. 2010)(insured's return of fraudulently transferred money was disgorgement, not a "loss"); *John M. O'Quinn P.C. v. National Union Fire Ins. Co.*, 33 F.Supp.3d 756, 770 (S.D. Tex. 2014)(arbitration award to refund excessive costs deducted from clients' settlements not a "loss").  See Allan Wendt,

---

[1] This disposes of White Deer's conditional offset claim.  White Deer claims that if it owes TAPS money for a fund shortfall, that amount be offset under any money TAPS may owe it. Doc. #19, ¶27.  The only money recovery could be under the duty to defend, i.e., reimbursing White Deer's costs to defend the underlying suit.  White Deer does not claim any sum is due for indemnity (i.e., 'damages' adjudged to Martin) because the underlying suit is ongoing.

INSURANCE CLAIMS AND DISPUTES §11.6 (6th Ed.)("Liability policies provide coverage for "damages" owed by the insured; accordingly, equitable claims for restitution or disgorgement should not be covered.")

32.  The rationale is that the insured incurs no loss as defined by the policy by being compelled to return property it has stolen, even if a more polite word than "stolen" is used to characterize the claim to restore the property.  *TransTexas Gas*, 597 F.3d at 309-310, *quoting Level 3 Communications Inc. v. Fed. Ins. Co.*, 272 F.3d 908, 911 (7th Cir. 2001); *Ryerson Inc.*, 676 F.3d at 612-13.

33.  Injunctive relief to restore illegally collected taxes does not transmute it into "money damages."  "Damages" are pecuniary compensation recovered by a person for loss or injury to his person, property, or rights.  *Aetna Cas. & Sur. Co. v. Hanna*, 224 F.2d 499, 503 (5th Cir. 1955).  It is a far cry from the costs unsuccessful litigants incur to comply with injunctive relief.  *Id.*  The term "damages" is not ambiguous, and the plain meaning of the term "damages" as used in the insurance context refers to legal damages and does not include equitable monetary relief. *Continental Ins. Cos. v. Northeastern Pharm. & Chem. Co.*, 842 F.2d 977, 985-86 (8th Cir. 1988); *International Ins. Co. v. Metropolitan St. Louis Sewer Dist.*, 938 F. Supp. 568, 571-72 (E.D. Mo. 1996).

34.  Thus, a refund by a governmental body of taxes or fees illegally imposed is not "damages" or "money damages" because such is restitution or disgorgement.  Therefore, the refund is not a "loss" within the policy. *Metro. St. Louis Sewer Dist.*, 938 F.Supp. at 571-72 (order to refund illegal tax was not "money damages" or a "loss"); *Central Dauphin*

*School Dist. v. American Cas. Co.*, 493 Pa. 254, 426 A.2d 94, 96-97 (Pa. 1981) (judgment to refund unlawfully imposed taxes was not a "loss").

### 2. Exclusion for non-pecuniary relief.

35.  By definition, injunctive and declaratory relief are non-pecuniary.  TAPS is not required to defend claims for non-pecuniary relief.  App. 1, p. 70.  Because the tax refund claims are equitable relief (not "money damages"), they are non-pecuniary and not covered as well.  Therefore all of Martin's claims fall completely within the exclusion for non-pecuniary claims.

### 3. Public policy forbids insuring disgorgement or reimbursement of monies illegal obtained.

36.  The Coverage Document requires TAPS to defend only if the suit alleged a wrongful act that is "covered under this coverage part."  App. 1, p. 68.  TAPS is not required to indemnify a loss that is deemed uninsurable under Texas law.  App. 1, p. 69.

37.  A judgment for restitution or disgorgement is not an insurable loss Texas law. *TransTexas Gas,* 597 F.3d at 309-10 (judgment against corporate officer to return funds as a fraudulent transfer not an insurable loss); *John M O'Quinn P.C.*, 33 F.Supp.3d at 769-77 (return of monies illegally withheld from clients' settlements was not an insurable loss); *Local 705 Int'l Brotherhood of Teamsters Health & Welfare Fund v. Five Stat Managers*, *L.L.C*, 735 N.E.2d 679, 683-84 (Ill. App.—1st Dist. 2000)(insured's restitution of pension funds it illegally received was not an insurable loss).

In our judgment, the public policy of this Commonwealth

> would be offended by permitting a political subdivision to use
> public funds to purchase "insurance" against court-ordered and
> statutorily-mandated refunding of taxes collected through an
> unlawful taxing measure.  Were Central Dauphin's position to
> prevail, a school district or any other taxing body would have
> little reason, if any, to enact only lawful taxing measures.  A
> district would be able to subject its citizens to an unlawful tax
> measure like the one imposed here, and yet in effect retain the
> proceeds of the unlawful tax simply by recovering on the
> claimed insurance coverage.

*Central Dauphin School Dist.*, 426 A.2d at 96.  Such loss is uninsurable even if restitution

results from a "wrongful act" as defined by the policy.  *Local 705 Int'l Bhd. of Teamsters*,

735 N.E.2d at 684; *Central Dauphin*, 426 A.2d at 95, 97.

### 4.  Martin's claim resulted from dishonest, fraudulent or criminal act.

38.  To recover illegally assessed taxes, Martin had two hurdles:  governmental

immunity and the voluntary payment defense.  To defeat immunity, Martin had to plead

and prove White Deer's officials acted *ultra vires* --- their acts violated express law and

they had no discretion to avoid reimbursing Martin.  *City of El Paso v. Heinrich*, 284

S.W.3d 366, 373-74 (Tex. 2009).  Even then, to avoid an end run around immunity against

money judgments, the injunctive relief concerning money is prospective only, not

retroactive.  *Id.* at 374-377.  When a taxpayer sues for a refund of illegally collected taxes,

there is an additional defense – voluntary payment.   *Dallas County Community College

Dist. v. Bolton*, 185 S.W.3d 868, 876-77 (Tex. 2005).  To defeat both defenses, Martin had

to allege and prove the tax was paid under duress, i.e., the taxing entity compelled

compliance under a void law and threatened punishment if the taxpayer refuses.  *Id.*

39.  Economic duress only occurs if the following elements are present: (1) a party threatens action, or commits an act, without legal right to do so; (2) the threat or action was of such a character as to destroy the other party's free agency; (3) the threat or action overcame the other party's free will and caused the to do that which it would not otherwise do and was not legally bound to do; (4) the restraint caused by such threat was imminent; and (5) the other party had no present means of protection. *Sudan v. Sudan,* 145 S.W.3d 280, 286 (Tex. App -- Houston [14th Dist.] 2004), *rev'd,* 199 S.W.3d 291 (Tex. 2006); *Rainey v. Davenport (In re Davenport)*, 353 B.R. 150, 204 (Bankr. S.D. Tex. 2006).  Texas courts prohibit enforcing mediated settlement agreements "procured by fraud, *duress,* coercion, or *other dishonest means.*"  *Morse v. Morse*, 349 S.W.3d 55, 56 (Tex. App.—El Paso 2010, no pet.), *citing Boyd v. Boyd*, 67 S.W.3d 398, 404-05 (Tex. App.—Fort Worth 2002, no pet.)(emphasis added).  That indicates that duress is a dishonest means to obtain consent, akin to fraud.  Therefore, payment obtained via duress is the result of fraud or dishonesty.

## C.   No duty to indemnify.

40.  TAPS's duty to indemnify is limited to a "loss" resulting from a "claim" for a "wrongful act."  "Loss" is defined to exclude (1) taxes, and (2) matters deemed uninsurable under Texas law.  The ELF excludes from the duty to indemnify:

a)  Non-pecuniary relief and the costs to effect non-pecuniary relief.

b)  A claim attributable to any member gaining in fact any profit, remuneration, or advantage to which the member was not legally entitled.

17

c) Any "claim" brought about, etc., by any dishonest, fraudulent, or criminal "wrongful act."

App. 1, p. 70. The facts supporting the underlying judgment show there is no "loss" from a "claim" because the judgment is for taxes or matters deemed uninsurable, not for money damages. Moreover, the judgment falls entirely within the exclusions.

**1. Duty to indemnify is justiciable though the underlying judgment is on appeal.**

41. Though the underlying judgment is not final, TAPS believes its falls within the *Griffin* exception. First, there is no duty to defend and the reasons that negate the duty to defend negate the duty to indemnify. The alleged facts establish the claim is not a covered loss and is actually uninsurable. Second, there is no potential claim consistent with the allegations that falls within coverage.

42. Martin alleged that White Deer illegally reduced the LOHE thereby forcing her to pay taxes higher than legally owed. The judgment grants non-pecuniary relief and that White Deer "disgorge and refund" the taxes collected. Therefore all relief granted is not covered or is excluded.

**2. The underlying judgment is not a "loss" from a claim for "money damages."**

43. TAPS indemnifies only a "loss" from a "claim," i.e., - a suit for "money damages." App. 1, p. 68. "Loss" does not include non-pecuniary relief or taxes. App. 1, p. 70. The injunctive and declaratory relief granted is not a "loss." *Hanna*, 224 F.2d at 503; *Nortex Oil & Gas*, 456 S.W.2d at 493-94.

18

44.   The judgement to "disgorge and refund" tax monies is not and does not result from a claim for money damages.  Disgorgement is not money or compensatory damages. *In re Longview Energy Co.*, 464 S.W.3d 353, 361 (Tex. 2015).   It is an equitable forfeiture of benefits wrongfully obtained.  *Id.*  Restitution is rooted in unjust enrichment.  *Miga v. Jensen*, 299 S.W.3d 98, 105 (Tex. 2009) (Hecht, C.J., dissenting).  A party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage. *Heldenfels Bros., Inc. v. Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992).  As argued above at pp. 13-14, whether called disgorgement, refund, or restitution, an order to give Martin back taxes illegally collected is not a "loss" or "money damages." T*ransTexas Gas,* 597 F.3d at 309-10; *Metro. St. Louis Sewer Dist.*, 938 F.Supp. at 571-72; *Central Dauphin School Dist.*, 426 A.2d at 96-97.

45.   Moreover, the only thing White Deer must disgorge or refund is taxes.  Taxes are excluded from being a covered "loss."  App. 1, p. 69.

### 3.  Disgorgement and restitution of illegally collected money is an uninsurable loss.

46.   "Loss" is defined to exclude "matters deemed uninsurable under the law pursuant to which the Coverage Document shall be construed."  App. 1, p. 69.  A judgment of restitution or disgorgement for monies illegally obtained is uninsurable for the purpose of this exclusion.  *TransTexas Gas,* 597 F.3d at 309-10; *Local 705 Int'l Bhd. of Teamsters*, 735 N.E.2d at 684; *Central Dauphin*, 426 A.2d at 95, 97.  Insuring a unit of local

government against unlawful taxation violates public policy.  *Central Dauphin*, 426 A.2d at 95, 97.

### 4. Judgment is based on White Deer gaining in fact a profit, remuneration, or advantage to which it was not legally entitled.

47.  TAPS is not required to indemnify a "loss" from a claim "based upon or attributable to a member gaining in fact any profit, remuneration, or advantage to which it was not legally entitled." App. 1, p.70. This is commonly called the "personal profit" exclusion. The underlying judgment rests on the finding that White Deer illegally raised Martin's taxes by illegally reducing the LOHE. App. 7. It concludes that White Deer is not entitled to the tax monies it collected. App. 7.

48.  A complaint that White Deer sought and obtained taxes to which it was not entitled falls within the personal profit exclusion. *Lebanon School Dist. v. Netherlands Ins. Co.*, No. 12-988, 2013 WL 308702 at *7 (M.D.Pa., Jan. 25, 2013)(claim school district collected truancy fees exceeding statutory limits was excluded). *See also John M O'Quinn P.C.* 33 F.Supp.3d 773-74 (excess expenses charged to clients and withheld from settlements fell within personal profit exclusion); *National Union Fire Ins. Co. v. U.S. Bank, N.A.*, No. 04-1958, 2008 WL 2405975 at *6-8 (S.D.Tex. June 11, 2008) (judgment that officer reimburse corporation for severance payment which he did not earn fell within exclusion). Whether White Deer committed fraud is immaterial; the key is that it was not legally entitled to the money. *National Union Fire*, 2008 WL 2405975 at *7-8.

**5. Judgment to disgorge and refund tax monies was brought about by a dishonest or fraudulent wrongful act.**

49.   To recover taxes paid to White Deer, Martin had to plead and prove (1) the tax was levied *ultra vires*, and (2) the tax was paid under duress.  *Heinrich*, 284 S.W.3d at 373-74; *Bolton*, 185 S.W.3d at 876-77.   A claim the defendant unlawfully acquired money through duress must involve dishonesty.

**D.    Governmental immunity bars White Deer's DTPA claim.**

50.  TAPS is not a "person" that can be sued under the DTPA.  TAPS is an interlocal cooperative self-insurance fund formed under chapters 791 and 2259, Texas Government Code.  The relationship between a self-insurance fund and its members differs from the ordinary consumer/seller relationship found in commercial insurance.  *Ben Bolt-Palito Blanco Consolidated Indep. Sch. Dist. v. Texas Political Subdivisions Property/Casualty Joint Self-Insurance Fund*, 212 S.W.3d 320, 327 (Tex. 2005).  Where local governments have formed a self-insuring fund, that fund is itself a distinct governmental unit and may assert governmental immunity for the performance of a governmental function.  *Id.* at 324-26.

51.  The DTPA provides for relief against a "person" who violates the DTPA.  TEX. BUS. & COMM. CODE §17.50(a).   The DTPA defines "person" as "an individual, partnership, corporation, association, or other group, however organized."   TEX. BUS. & COMM. CODE §17.45(3).  However, that definition does not waive TAPS's governmental immunity.

> In order to preserve the legislature's interest in managing state fiscal matters through the appropriations process, a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language. In a statute, the use of "person," as defined by Section 311.005 to include governmental entities, does not indicate legislative intent to waive sovereign immunity unless the context of the statute indicates no other reasonable construction.

TEX. GOV'T CODE §311.034.    DTPA §§17.45(3) and 17.50 do not clearly and unambiguously waive governmental immunity; therefore White Deer's DTPA claims are barred. *Dallas County v. Rischon Dev. Corp.*, 242 S.W.3d 90, 94-95 (Tex. App.–Dallas 2007, pet. denied); *Kerrville HRH, Inc. v. City of Kerrville*, 803 S.W.2d 377, 382 (Tex. App.—San Antonio 1990, writ denied); *Sippel v. Hagan*, No. G-10-418, 2011 U.S. Dist. LEXIS 160285 *4 (S.D. Tex. Apr. 19, 2011); *Davis v. Collin County Community College Dist.*, No. 4:09cv309, 2009 U.S. Dist. LEXIS 104456 at *6-9 (E.D. Tex. Oct. 13, 2009).

## E.    No evidence of alleged DTPA violations.

52.  White Deer alleges TAPS violated DTPA §17.46(b) by:

a)  Representing its insurance services had uses, benefits, etc., they do not have. DTPA §17.46(b)(5).

b)  Representing the services were of a particular standard, quality, or grade, if they are of another.  DTPA §17.46(b)(7).

c)  Advertising services without the intent to sell them as advertised.  DTPA §17.46(b)(9).

    d)  Representing the agreement confers or involves rights, remedies, or obligations which it does not have or are prohibited by law.  DTPA §17.46(b)(12).

Doc. #19, ¶24.  White Deer alleges TAPS made false representations about insurance services it offered for sale, specifically that it covered White Deer's wrongful acts.  Doc. #19, ¶23.  White Deer alleges TAPS misinterpreted the policy's coverage for "wrongful acts" by mistakenly asserting that reducing the LOHE was *ultra vires* and therefore not covered.  Doc #19, ¶¶9, 12-13.

    53.  There is no evidence that:

    a)  TAPS represented to White Deer the Coverage Document would cover claims and lawsuits arising from reducing the LOHE, that such representations were a producing cause of damages, or that White Deer relied on such representations.

    b)  TAPS advertised that the Coverage Document would cover claims and lawsuits arising from reducing the LOHE, that such advertisements were a producing cause of damages, or that White Deer relied on such advertisements.

    c)  TAPS made misrepresentations to White Deer concerning its services or the Coverage Documents that such representations were a producing cause of damages, or that White Deer relied on such representations.

Any representation given to explain why TAPS would not defend or indemnify the Martin lawsuit is post-loss; if defense or indemnity really were owed, the alleged misrepresentation speaks only to a claim for breach of contract and is not a misrepresentation under the DTPA or a producing cause of damage.

**1. Standard for no evidence summary judgment.**

54. This Court may grant summary judgment on a claim if the record shows that there is no genuine issue of material fact and that "the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party on the issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where the nonmovant bears the burden of proof at trial, the movant may either offer evidence that undermines one or more of the essential elements of the nonmovant's claim, or point out the absence of evidence supporting an essential element of the nonmovant's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (where there is an absence of evidence supporting an essential element of the nonmovant's claim, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial").

55. If the movant successfully carries this burden at the summary judgment stage, the burden then shifts to the nonmovant to show that the court should not grant summary judgment. *Id.* at 324. The nonmovant must set forth specific facts that show a genuine issue for trial—only a genuine dispute over a material fact will preclude summary judgment. *Anderson*, 477 U.S. at 248, 256. The nonmovant cannot rely on conclusory allegations, improbable inferences, or unsupported speculation. *Krim v. BancTexas Grp., Inc.*, 989 F.2d 1435, 1449 (5th Cir. 1993). In ruling on a summary judgment motion, a court must review

the facts and draw all reasonable inferences in favor of the nonmoving party—here, the

Plaintiff. *See Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

### 2. White Deer fails to identify any evidence of misrepresentation or producing cause of injury.

56.   White Deer's allegations are inadequate.  At the very least, the plaintiff must

identify specific misrepresentations and explain how they harmed the plaintiff.  *Webb v.*

*Unumprovident Corp.*, 507 F. Supp. 2d 668, 679-80 (W.D. Tex. 2005).  In cases where

plaintiffs recover on DTPA causes of action, defendants make misrepresentations, the

plaintiffs accept the insurance coverage, and then discover to their peril that the insurance

coverage was not as promised.  *Huntington Operating Corp. v. Sybonney Express, Inc.,*

No. H-08-781, 2009 U.S. Dist. LEXIS 67561, *10 (S.D. Tex. Aug. 3, 2009) *citing Royal*

*Globe Ins. Co. v. Bar Consultants, Inc*., 577 S.W.2d 688 (Tex. 1979) and *State Farm Fire*

*& Cas. Co. v. Gros*, 818 S.W.2d 908 (Tex. App.—Austin 1991, no writ).

57.   White Deer's allegation tracks the statutory language, but formulaic allegations

that fail to recite specific conduct and representations are insufficient.  *Spring St. Apts.*

*Waco, LLC v. Philadelphia Indem. Ins. Co.*, No. W-16-CA-00315-JCM, 2017 U.S. Dist.

LEXIS 53411, *9 (W.D. Tex., Apr. 6, 2017); *Barrera v. Allstate Ins. Co.*, No. DR-16-CV-

0037-AM-VRG, 2017 U.S. Dist. LEXIS 141056, *35-36 (W.D. Tex. Mar. 6, 2017),

*adopted* 2017 U.S. Dist. 141055 (W.D. Tex., Mar. 21, 2017).  None of the allegations

sufficiently "specif[ies] the statements contended to be fraudulent, identify the speaker,

state when and where the statements were made, and explain why the statements were

fraudulent." *Lakeside FBCC, LP v. Everest Indem. Ins. Co.*, No. SA-17-CV-00491-XR, 2017 WL 3448190, 2017 U.S. Dist. LEXIS 127507 at *16-18 (W.D. Tex. Aug. 10, 2017).

58.   Here, the Coverage Document applied to claims first made during the policy period.  App. 1, p. 68.  White Deer has not identified any representation about how the Coverage Document might apply to a claim arising from the LOHE reduction made by TAPS prior to Martin's suit.  *Compare Webb*, 507 F. Supp. 2d at 679-80 (insured failed to plead or identify in his affidavit any specific, false representation about the loss).  Any representation after Martin sued could not cause damage because White Deer could not rely on it to obtain coverage through TAPS.

### 3. TAPS's post-claim explanation of its coverage decision is not a DTPA misrepresentation.

59.   White Deer argues TAPS's letter explaining its coverage decision was a 'misrepresentation' because, contrary to the reasons given, the Coverage Document ELF did cover Martin's suit.  Doc. #19, ¶¶12-13.  White Deer does not claim that the letter contained *misrepresentations*, but rather that TAPS violated the Coverage Document by failing to fulfill its obligations to indemnify and defend White Deer. This gives rise to a claim for breach of contract, but cannot state a claim under the DTPA.  *Partain*, 838 F. Supp. 2d at 562-63.

### F.   White Deer is not entitled to attorney's fees.

60.  White Deer alleges it is entitled to attorney's fees under the (1) DTPA, (2) Texas Civil Practices & Remedies Code section 38.001, and (3) Texas's Uniform Declaratory

Judgment Act (DJA), Texas Civil Practices & Remedies Code section 37.009.  As argued above, White Deer cannot recover under the DTPS.

61.  Because there is no coverage, White Deer's declaratory relief and contract claims fail.  Nonetheless, White Deer may not recover attorney's fees under sections 37.009 or 38.001.

### 1.  Section 38.001 does not apply to TAPS.

62.  Section 38.001 permits recovery of attorney's fees for valid contract claims against "an individual or corporation." TEX. CIV. PRAC. & REM. CODE §38.001. "Corporation" refers to incorporated entities and not business entities generally.  *Choice! Power, L.P. v. Feeley*, 501 S.W.3d 199, 203 (Tex. App.—Houston [1st Dist.] 2016, no pet.).  Consequently, the statute does not apply to claims against partnerships, limited partnerships, limited liability companies, etc.  *See C*BIF Ltd. P'ship v. TGI Friday's Inc.*, No. 05-15-00157-CV, 2017 WL 1455407, *25 (Tex. App.—Dallas Apr. 21, 2017, pet. filed) ("Under the plain language of section 38.001, a trial court cannot order limited liability partnerships, limited liability companies, or limited partnerships to pay attorney's fees."); *Cypress Engine Accessories, LLC v. HDMS Ltd. Co.*, 283 F.Supp.3d 580, 591 (S.D.Tex. 2017).

63. TAPS is self-funded risk program created under the Texas Interlocal Cooperation Act, Texas Government Code, chapters 791 and 2259.  *Supra.* at p. 21. Therefore, it is not a corporation subject to section 38.001.

27

### 2. Attorney's fees under Texas DJA not available in federal court.

64.  Though the Texas DJA expressly provides for attorney's fees, it functions solely as a procedural mechanism for resolving substantive controversies which are already within the jurisdiction of the courts. *Housing Authority v. Valdez*, 841 S.W.2d 860, 864 (Tex. App.—Corpus Christi 1992, writ denied). Unlike with substantive law, however, Texas procedure does not govern a diversity action. *See Gasperini v. Center for Humanities, Inc.,* 518 U.S. 415 (1996) (observing that "[u]nder the Erie doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law"). Thus, in federal court, a party may not rely on the Texas DJA to authorize attorney's fees in a diversity case because the statute is not substantive law. *C*amacho v. Tex. Workforce Comm'n*, 445 F.3d 407, 409-10 (5th Cir. 2006), *cert. denied*, 549 U.S. 826 (2006); *Utica Lloyd's v. Mitchell*, 138 F.3d 208, 210 (5th Cir. 1998).

65.  For the same reason, the Texas DJA is not available as a basis for awarding attorneys' fees in federal bankruptcy proceedings. *In re Bigler LP*, Nos. 09-38188, 09-38189, 09-38190, 09-38192, 09-38194, 2011 WL 2420319,  2011 Bankr. LEXIS 2329 at *20-25 (Bankr. S.D. Tex. June 9, 2011); *Harmon v. Lighthouse Capital Funding, Inc.*, No. 10-03207, 2011 WL 1457236 at *4 (Bankr. S.D. Tex, Apr. 14, 2011).

Wherefore, premises considered, TAPS requests the Court grant it summary judgment that:

a)  it has no duty to defend Plaintiff in the underlying suit; and,

b)  the determination of TAPS's duty to pay is premature; or

c)  it has no duty to indemnify Plaintiff's liability in the underlying suit,

d)  White Deer take nothing on its claims for declaratory relief, breach of contract,

DTPA violations, and offset,

e)  Where Deer take nothing on its claims for attorney's fees, and,

the Court grant any other relief to which TAPS may show itself entitled.

Respectfully submitted,

/s/ Scott T. Clark

**ADAMS & GRAHAM, L.L.P.**
Scott T. Clark
State Bar No. 00795896
P.O. Drawer 1429
Harlingen, Texas 78551-1429
Telephone: (956) 428-7495 Ext. 147
Fax: (956) 428-2954
Email: sclark@adamsgraham.com
***Attorneys for Defendants Texas Association of Public Schools Property and Liability Fund***

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument was served via ECF on this 20th day of July, 2018, to counsel as shown below:

Mike Smiley
**UNDERWOOD LAW FIRM, P.C.**
P.O. Box 9158
Amarillo, Texas 79105

Joni Paul
**PACKARD, HOOD, JOHNSON & PAUL, L.L.P.**
Amarillo Building, Lobby Box 34
301 S. Polk Street, Suite 375
Amarillo, Texas 79101-1420 5

William B. Kingman
**LAW OFFICE OF WILLIAM B. KINGMAN, P.C.**
3511 Broadway
San Antonio, Texas  78209


_/s/_  Scott. T. Clark
SCOTT T. CLARK